UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D'JUAN MANUEL PIZARRO,<br><br>  Plaintiff,<br><br>v.<br><br>FCI MENDOTA, *et al.*,<br><br>  Defendants. | Case No. 1:24-cv-00749-KES-EPG (PC)<br><br>ORDER FOR PLAINTIFF TO SHOW CAUSE WHY THIS ACTION SHOULD NOT BE DISMISSED WITHOUT PREJUDICE FOR FAILURE TO EXHAUST<br><br>RESPONSE DUE IN THIRTY DAYS |

Plaintiff D'Juan Pizarro is a federal prisoner in custody of Bureau of Prisons (BOP) at Federal Correctional Institution (FCI) Mendota. He is proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff signed the complaint commencing this action on June 16, 2024, and it was docketed with this Court on June 26, 2024. (ECF No. 1). It appears from the face of the Complaint that Plaintiff did not exhaust his available administrative remedies before filing this action.

Accordingly, the Court will order Plaintiff to file a response within thirty days, explaining why this action should not be dismissed for failure to exhaust available administrative remedies. Such a dismissal would be without prejudice, so that Plaintiff may refile the action after exhausting administrative remedies, to the extent those remedies are still available to him.

## I. LEGAL STANDARDS

### A. Exhaustion under PLRA

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199–1201 (9th Cir. 2002) (*per curiam*). The exhaustion requirement applies to all prisoner suits relating to prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Booth v. Churner*, 532 U.S. 731, 736, 741 (2001); *Ross v. Blake*, 578 U.S. 632, 643 (2016).

"Under the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. The grievance need not include legal terminology or legal theories, because [t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. The grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Reyes*, 810 F.3d at 659 (alteration in original) (citations and internal quotation marks omitted).

As discussed in *Ross*, 578 U.S. at 639, there are no "special circumstances" exceptions to the exhaustion requirement. The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* The *Ross* Court described this qualification as follows:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. *See* 532 U.S., at 736, 738, 121 S.Ct. 1819. . . .

> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. . . .
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. . . . As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

*Id.* at 643–44.

If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). *Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

When it is clear on the face of the complaint that a plaintiff failed to exhaust administrative remedies, dismissal is proper. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

### B.  BOP grievance process

The BOP grievance process is set forth at 28 C.F.R. § 542.13–.15. As a first step in this process, an inmate normally must present his complaint informally to prison staff using a BP–8 form. If the informal complaint does not resolve the dispute, the inmate may make an "Administrative Remedy Request" concerning the dispute to the prison Warden using a BP–9 form. The BP–8 and BP–9 are linked. Both forms involve a complaint arising out of the same incident, and both forms must be submitted within 20 calendar days of the date of that incident. 28 C.F.R. § 542.14(a).

If the Warden renders an adverse decision on the BP–9, the inmate may appeal to the Regional Director using a BP–10 form. 28 C.F.R. § 542.15(a). The BP–10 must be submitted to the Regional Director within 20 calendar days of the date of the Warden's decision. *Id.*

The inmate may appeal an adverse decision by the Regional Director to the Central Office (also called the General Counsel) of the BOP using a BP–11 form. *Id.* The BP–11 must be submitted to the Central Office within 30 calendar days from the date of the Regional Director's decision. *Id.*

## II.   ANALYSIS

It appears from the face of the complaint that Plaintiff did not exhaust his available administrative remedies before filing this action. Plaintiff sues the following defendants: MEN-MENDOTA FCI, as the INSTITUTION for the protection of the MISSING CHILDREN housed in this INSTITUTION;" "Pizarro, D'Juan Manuel, enterprise of the PP44 or INMATE PROFILE;" "E. Appleton, as the Unit Manager;" "F. Severance, as the (COR) Contracting Offier's Representative;" "E. Cheverria, as the case worker." (ECF No. 1 at 1–2). Plaintiff then alleges two claims. (ECF No. 1). The first claim is labeled "statute of fraud" (*id.* at 2) and the other alleges denial of medical care (*id.* at 6).

With respect to exhausting administrative remedies as to the first claim, Plaintiff states:

> By the stay or Mr. Pizzaro, he would have remedy for CLAIM I if there was an assistance by TEAM, but it seems as though TEAM is way to busy to respond from the only remedy given . . . which has the only remedy allowed by the people calling themselves TEAM, which "TEAM" seems one sided, just like the contract or agreement or is it because Mr. Pizarro is CIVILLY DEAD, per CIVIL LAW . . . meanwhile Mr. Pizarro is being called a CHOMO, by STAFF of MEN-MENDOTA FCI as well as being called A FAG, again violating CIVIL UNION, even though he's not gay or even a CHILD, per STATUTE . . . or authorized by the age of 34 U.S.C. § 10410(4) or even 34 U.S.C. § 20911(8) and (14).

(ECF No. 1 at 5).

For his second claim, Plaintiff alleges that he has a hereditary eye disease called keratoconus. (ECF No. 1 at 6). He has made requests in four institutions asking for medical treatment, starting in 2017. (*Id.*) He states he was not treated until 2022, after he filed a BP-8 and BP-9 remedy form and was finally prescribed medical contact lens treatment. (*Id.* at 7). But the medical treatment was a failure as to his right eye. (*Id.*) His last diagnosis was in 2023, which revealed he now has Stage 5 advanced keratoconus. (*Id.*)

With respect to exhausting administrative remedies as to this second claim, Plaintiff alleges he entered Mendota FCI on May 11, 2024. (ECF No. 1 at 7). He states he submitted a BP-8 on June 11, 2024. (*Id.* at 9). The enclosed records show that he saw an RN and requested

special lenses for his eyes on May 20, 2024. (*Id.* at 19). The RN then forwarded his request to a doctor, and Plaintiff saw a doctor for keratoconus and lenses on May 21, 2024. (*Id.* at 18, 19).

Defendants in this lawsuit are Mendota FCI itself and employees at Mendota FCI, therefore, Plaintiff's claims accrued on May 11, 2024, at the earliest. Plaintiff's complaint was signed on June 16, 2024. (*Id.* at 10). Based on these dates, it does not appear that there was sufficient time for Plaintiff to follow BOP's grievance procedure and fully exhaust his claims before filing his suit.

Accordingly, the Court will order Plaintiff to show cause why this action should not be dismissed for failure to exhaust available administrative remedies. The Court notes that this dismissal would be without prejudice. Therefore, if Plaintiff exhausts his administrative remedies in the future, he could refile the complaint.

In response to this order, the Court also welcomes Plaintiff to file any documents he believes demonstrates that he has exhausted all available administrative remedies.

### III.    CONCLUSION AND ORDER TO SHOW CAUSE

Accordingly, **IT IS ORDERED** that, within **thirty (30) days** from the date of service of this order, Plaintiff shall show cause why this action should not be dismissed, without prejudice, for failure to exhaust available administrative remedies. Plaintiff's response may also contain any documents Plaintiff believes are responsive to the exhaustion issue. If Plaintiff fails to file a response the Court may recommend to a district judge that Plaintiff's complaint be dismissed without prejudice for failure to exhaust administrative remedies.

IT IS SO ORDERED.

Dated:    **October 7, 2024**             /s/ Erica P. Grosjean
                                                               UNITED STATES MAGISTRATE JUDGE